

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00102-CV

**IN THE INTEREST OF J.L.E.F. AND B.Z.F.**, Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00245
Honorable Raul Perales, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: July 17, 2024

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her children J.L.E.F. (born 2012) and B.Z.F. (born 2022).[1] Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. We affirm.

### BACKGROUND

On February 21, 2023, the Texas Department of Family and Protective Services removed J.L.E.F. and B.Z.F. due to allegations of domestic violence. The Department obtained temporary

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and refer to the children's biological Mother and Father as such. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

managing conservatorship over the children and filed a petition to terminate Mother and Father's parental rights.

The Department also created family service plans for both parents. As conditions to reunification, Mother's service plan required her to, inter alia, obtain legal verifiable income and provide proof of same; obtain safe, stable, and appropriate housing and provide proof of same; undergo a domestic violence assessment, complete a domestic violence program, and maintain a safe home environment free from domestic violence; complete a drug assessment and attend appropriate treatment; refrain from illegal drug use and alcohol abuse; submit to random drug testing; complete a psychological evaluation and follow recommendations; and attend individual counseling. The Department ultimately pursued termination of Mother and Father's parental rights.

On January 10 and January 22, 2024, the trial court held a two-day bench trial. The trial court heard testimony from five witnesses: (1) Department caseworker Kayla Arguello; (2) J.L.E.F.'s therapist, Jennifer Brooks; (3) the children's maternal Grandfather; (4) Mother; and (5) Father. After the conclusion of trial, the trial court signed an order terminating Mother and Father's parental rights to J.L.E.F. and B.Z.F. pursuant to subsections (D), (E), and (O) and finding termination of Mother and Father's parental rights was in the best interest of the children. Only Mother appealed.

## BEST INTEREST

Mother challenges the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of the children.

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In*

*re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and that termination was in the best interest of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re M.G.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to consider regarding a parent's willingness and ability to provide a child

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate

with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

---

an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

## *Application*

In her sole issue on appeal, Mother argues there is insufficient evidence to support the trial court's finding that termination was in the best interest of J.L.E.F. and B.Z.F.

The case began as a result of domestic violence between Mother and Father. J.L.E.F.—eleven years old at the time of trial—would place himself between his parents and remove infant B.Z.F. during fights. During the pendency of the case, Mother and Father were both arrested in separate domestic violence incidents, and Father testified that yet another incident occurred a month or two before trial. Mother's inability to maintain a lifestyle free of criminal conduct subjects her children to instability and endangers their well-being. *See In re X.J.L.*, No. 04-17-00466-CV, 2017 WL 4655102, at *3 (Tex. App.—San Antonio Oct. 18, 2017, no pet.). The trial court could have considered Mother's criminal conduct and that Mother could not provide for the children's physical and emotional well-being.

Mother also failed to comply, or substantially comply, with her court-ordered service plan. Among many services Mother failed to begin or complete, Mother repeatedly signed up and subsequently failed to attend domestic violence courses to address the initial cause for removal. Mother's failure to complete classes required by her service plan is probative on the issue of best interest. *See In re C.H.*, 89 S.W.3d at 28.

The trial court could have also considered Mother's drug use in determining the best interest of the children. Mother was initially required to attend drug treatment after "concerning" drug test results. Although Mother thereafter successfully completed a seventeen-day inpatient program, she failed to maintain sobriety. After another "concerning" drug test result, the caseworker asked Mother to attend additional drug treatment. Mother refused to attend and refused any further drug testing. The trial court could have inferred from Mother's failure to submit to court ordered drug testing that she was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex.

App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, its use is properly considered in determining termination is in the children's best interest. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8.

Grandfather testified that he was familiar with Mother's drug use and had seen her condition and mental health deteriorate. He stated that he was afraid for her, what she might be capable of, and of what might happen to the children if her parental rights were not terminated. Grandfather described concerns about Mother's mental health: "She believes that her 401(k) is an excessive amount of money. She believes that she's being forced to leave the country. She has sent me messages about Belgium VISAs and also how she's part of the Census Bureau." Mother's testimony buttressed Grandfather's concerns. In response to a question asking why she could not complete her services, Mother stated, "I have, you know, a victim – I'm a victim of identity theft and I've been in a data breach. I guess my IP address is being shown since there's people that literally follow me and circle around me. I don't know what that means if it's just conversation or warning or something, but they literally do. I'm being exposed to some sites and websites, cloud share. I don't know what that is, either. Just everything I do. It's ridiculous." When asked if she was receiving treatment for her mental health, Mother replied that she took Xanax "every now and then" and engaged in "mindfulness activities," such as walking and "looking out the window and listening to dogs bark." Although Mother completed psychological and psychiatric evaluations, she failed to follow any recommendations and attend therapy as required by her plan.

Mother attended all but five of her forty-two scheduled visitations with the children. Although her visits were largely appropriate, during some of the visits, she argued with J.L.E.F., blaming him for the Department's involvement. The caseworker testified that she personally witnessed Mother blaming J.L.E.F. at a visitation, and J.L.E.F.'s therapist testified that J.L.E.F.

told her Mother blamed him multiple times. Although Mother testified it was "[a]bsolutely not true at all" that she ever blamed J.L.E.F. for the Department's involvement, she later testified, "I'm saying my son made that [blaming him for the Department's involvement] up, too. That was the whole reason in the beginning of the case that my son made this up." Mother further testified that she believed the children's maternal grandparents "bribed or conned or tricked" J.L.E.F. into being "mentally and emotionally abusive" towards Mother because he received "six bucks and brand-new shoes" from them. From this evidence, the trial court could have determined that Mother was unable to provide for the emotional well-being of the children.

Mother also failed to maintain stable housing and employment. A parent's failure to provide proof of housing or employment is relevant to a best-interest review. *See In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet. h.). "Evidence of a parent's unstable lifestyle also can support a factfinder's conclusion that termination of parental rights is in the child's best interest. Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs." *Id.* At trial, Mother testified she was living "[b]etween hotels, friends' places, and her car." Although Mother was accepted into Casa Mia, where she and the children could have resided for up to two years, she never followed up. She also could have been accepted into a shelter but chose not to go. When asked whether she could provide a safe home, Mother stated she could if she had "the correct means and resources," but when asked if she had such means and resources, she stated, "I do not." Regarding employment, Mother stated that she was "journaling" but that "it's not making ends meet."

The trial court could have also properly considered the children's improvement since their current placement with their maternal grandparents, who wish to pursue adoption. J.L.E.F. was "parentified" when he came into care. He reported attending to B.Z.F. throughout the night when

his parents would not change B.Z.F.'s diaper or would neglect B.Z.F. as he cried during the night. However, J.L.E.F.'s therapist reported his parentification abated after he began living with his grandparents, and by the time of trial, J.L.E.F.'s therapist explained the improvement and that J.L.E.F. was experiencing normal childhood:

> [W]hen I first initially started meeting with [J.L.E.F.] whenever he was a student at school, he was very hypervigilant. He was lots of times very exhausted and tired at school. He did not discuss anything that was going on at home.
>
> He was a student that was referred to me as a student who was struggling, but he would never share experiences. He would never report situations that were going on at home or share any details about his experience at home with mom and dad.
>
> He was very anxious, very overwhelmed. School was really a safe place.
>
> He reported to me that he had something called a go bag, which was packed with essential items. So when mom and dad would begin to fight and the fighting became too intense, he would grab his bag and he would leave the apartment any way he could, whether it be a door or through any means of getting out of the apartment.
>
> And now he is very, I would say, able to relax in his settings. He's adjusted very well to school. He's very open. His body in general has been able to relax. He's able to talk about the future. He's able to plan for the future.
>
> He's very secure. He's been able to open up more about the events and start to recall events that happened when he was living with biological parents. He's very relieved that his younger brother especially is in a place that is safe and secure and consistent.

While in their current placement, the children's medical and mental health care needs have been satisfied. That the children's needs are being met in their current placement with a planned adoption further supports the trial court's finding that termination was in the children's best interest. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied).

J.L.E.F. expressed a desire not to return to his parents' care because of the level of domestic violence to which he was exposed. He was "very fearful of being in [Mother's] presence without supervision[.]" The trial court could have considered J.L.E.F.'s desire in its best interest determination. *Holley*, 544 S.W.2d at 371–72. Although B.Z.F. was too young to express his desires, the trial court could have considered testimony that B.Z.F. was bonded with his grandparents and well-cared for by them in determining termination was in B.Z.F.'s best interest. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of J.L.E.F. and B.Z.F. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's arguments to the contrary.

## CONCLUSION

Having overruled appellant's issues, the judgment of the trial court is affirmed.

Lori I. Valenzuela, Justice